IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION


FILED

SEP 18 2018

Clerk, U.S. District Court
District Of Montana
Helena

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 04-12-H-CCL |
| Plaintiff, | |
| vs. | FINDINGS OF FACT & |
| JAMES LEE PHELPS, | CONCLUSIONS OF LAW |
| Defendant. | |

This matter came before the Court on Defendant's *pro se* motion to terminate supervision and a memorandum from his supervising probation officer requesting a hearing pursuant to 18 U.S.C. § 4243 to assess the need for continued supervision or the appropriateness of supervision being terminated. In response to Defendant's *pro se* motion and the probation officer's hearing request, the Court set down a release hearing for September 7, 2018. The purpose of the hearing was to determine whether Defendant's unconditional release from supervision would create a substanial risk of bodily injury to another person or serious damage to property of another due to a present mental disease or defect.

Defendant Phelps (Mr. Phelps) appeared at his hearing via video from Burlington, Vermont. His counsel, Michael Donahoe, was present in person, as

1

was counsel for the United States, Paulette Stewart. The Court heard testimony from Mr. Phelps and the following witnesses, who also appeared by video from Vermont: Miro Passe, Mr. Phelps's case manager at the Howard Center; Dr. Sandra Steingard, Mr. Phelps's treating psychiatrist at the Howard Center; and Louis Stazi, Mr. Phelps's United States Probation Officer.

Based on the evidence presented at the September 7, 2018, hearing, and the record in this case, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On June 6, 2005, the Court held a bench trial and found that Mr. Phelps had committed two federal offenses (setting timber on fire and malicious destruction of federal property) but that he suffered from a severe mental disease (schizophrenia, undifferentiated type) that made hm unable to appreciate the nature and quality or the wrongfulness of his acts. The Court therefore found him not guilty only by reason of insanity.

2. In November of 2005, the Court conducted a "dangerousness hearing" under 18 U.S.C. § 4243. The Court held that the Defendant failed to meet his burden of proof by the "clear and convincing evidence" standard that "his release would not create a substantial risk of bodily injury to another person or

serious damage of property of another due to a present mental disease or defect." 18 U.S.C. § 4243(d). Defendant was remanded to the custody of the Attorney General and was placed in Federal Medical Center, Devins, in Massachusetts.

3. On January 25, 2008, the Court granted Mr. Phelps conditional release, based on 18 U.S.C. § 4243(f) and the filing by Warden Sabol (Federal Medical Center, Devins) of a "Certificate of Improved Mental Condition and Request for Conditional Release from Hospitalization."

4. The conditions of release imposed by the Court in January of 2008 included a requirement that Mr. Phelps was to be supervised by the United States Probation Office, District of Vermont, and was to reside at the Next Door Residential Program, operated by the Howard Center, in Burlington, Vermont.

5. Dr. Steingard first met Mr. Phelps in 2007, when she conducted the initial assessment regarding his release to the Howard Center. She has continued to serve as his treating psychiatrist since that time.

6. United States Probation Officer Stazi (PO Stazi) began supervising Mr. Phelps in January of 2008, and has continued to supervise him since that time.

7. In October of 2010, the Court modified Defendant Phelps's conditions to allow him to reside outside the Howard Center. This modification was requested by PO Stazi and consented to by Mr. Phelps.

8. Over the years, PO Stazi has reduced the intensity of his supervision of Mr. Phelps based on Mr. Phelps's compliance with his conditions of supervision and with the schedule established by the Howard Center. PO Stazi has observed Mr. Phelps's comfort level with living independently in the community improve during the years he has supervised Mr. Phelps.

9. PO Stazi is unaware of any time in the last 10 years that Mr. Phelps has violated a condition of release. PO Stazi has observed nothing in Mr. Phelps's behavior over the last 10 years to suggest that Mr. Phelps is a danger to persons or property.

10. PO Stazi has consulted with his supervisor regarding Mr. Phelps's request for unconditional release and PO Stazi supports that request based on Mr. Phelps's compliance with supervision and with his treatment program.

11. Mr. Passe has served as Mr. Phelps's case manager for the last seven to eight years. During that time, Mr. Passe has met personally with Defendant Phelps at least three times per month, as they have a regularly scheduled meeting every Monday at the Howard Center.

12. Mr. Phelps is on a restricted budget because his only income comes from social security disability payments. Mr. Passe pays Mr. Phelps's housing costs and related bills and provides Mr. Phelps with $100 per week for food and

necessities. There is no financial concern regarding Mr. Phelps's ability to pay for his medications because Mr. Phelps's co-pay for the prescriptions is very low.

13. Mr. Passe reports that Mr. Phelps follows Howard Center's recommendations regarding treatment, medication, and housing.

14. During the eight years Mr. Passe has been Mr. Phelps's case manager, Mr. Passe has never seen Mr. Phelps display any indication that Mr. Phelps would harm any person or property.

15. Dr. Steingard explained that Howard Center intends to continue its role as payee for Mr. Phelps's social security disability payments to ensure that he can continue to pay for his necessities. Mr. Phelps cannot become his own payee without first finding a physician to state that he is capable of handling his own funds. Given the limited population of Burlington, Vermont, any physician approached by Mr. Phelps would likely contact Dr. Steingard, making it extremely unlikely that Mr. Phelps could change Howard Center's payee status without her knowledge and approval. While she hopes that Mr. Phelps can someday become his own payee, she does not see that happening in the near future.

16. Over the years Dr. Steingard has modified the type, amount, and ingestion method of Mr. Phelps's medication. Mr. Phelps initially received his medication through an injection. He now takes a low dose of an anti-psychotic

drug, Risperidone in pill form. Mr. Phelps has never objected to taking his medication and Dr. Steingard has never observed any signs that he has not been taking his medication. She therefore believes that he will continue to take his medication, even if he is no longer under the supervision of the United States Probation Office. She also thinks that, given his current low dose, there is little risk that his symptoms will worsen profoundly, should he stop taking his medication.

17.     Dr. Steingard testified that, although Mr. Phelps continues to hear voices, she has never seen any indication that those voices have influenced his actions or impaired his judgment.

18.     Dr. Steingard is aware of Mr. Phelps's history and notes that Mr. Phelps has made no statements and engaged in no behavior to indicate that he has a preoccupation with setting fires.

19.     Dr. Steingard also explained that Howard Center intends to continue to provide Mr. Phelps with psychiatric treatment and case management services.

20.     Given the Howard Center's standing in the community and relationship with law enforcement and other mental health care providers, Dr. Steingard believes the Howard Center would likely learn of any community concern regarding Mr. Phelps's future behavior.

21. Dr. Steingard is familiar with the State of Vermont's civil commitment procedures and with available options short of civil commitment which could be used if needed to protect Mr. Phelps or the community.

22. Mr. Phelps has been successfully living on his own, with limited supervision by the United States Probation Office, for a number of years.

23. Mr. Phelps intends to continue residing in his apartment in Burlington, Vermont and to continue seeing Dr. Steingard. He appreciates the benefits he gets from his medication and intends to continue taking it.

24. The Howard Center is prepared to continue serving as payee for Mr. Phelps's social security disability payments and to continue to provide him with psychiatric treatment and case management services.

## CONCLUSIONS OF LAW

1. Mr. Phelps's release from supervision by the United States Probation Office will not substantially change his lifestyle, given the Howard Center's continued commitment to provide him with services.

2. The professionals who testified at Mr. Phelps's hearing have worked closely with him for the past ten years and all agree that Mr. Phelps is a suitable candidate for independent living, free of government supervision.

3. Mr. Phelps has demonstrated by clear and convincing evidence that

his release from supervision "would no longer create a substantial risk of bodily injury to another person or serious damage to property of another," 18 U.S.C. § 4243(f)(1).

4. Mr. Phelps is therefore entitled to be immediately discharged from supervision. *Id.*

**IT IS HEREBY ORDERED** that Mr. Phelps's *pro se* motion to terminate supervision (Doc. 49) is GRANTED. Mr. Phelps is discharged from federal supervision and all previous conditions imposed by the Court. The Clerk of Court is directed to notify Mr. Phelps and counsel of entry of this order and to close the file.

Dated this 18th day of September, 2018.

CHARLES C. LOVELL
Senior United States District Judge